IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JEAN TILLOTSON,<br><br>       Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA; FMR LLC; and THE FIDELITY GROUP EMPLOYEES DISABILITY INSURANCE PLAN,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING DISCOVERY**<br><br>Case No. 1:10-CV-00047-TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

During scheduling, a conflict between the parties arose over whether discovery would be allowed in this ERISA case. In preparation for a scheduling conference set August 3, 2010, Plaintff filed an Attorney Planning Meeting Report,[1] and Defendants responded.[2] Plaintiff replied[3] and the court ordered that the parties brief "any factual basis for alleging that CIGNA has an inherent conflict of interest and that a conflict of interest is actually presented because of CIGNAs relationship with MRIA."[4] The parties filed supplemental briefs.[5] Then the Tenth Circuit Court of Appeals issued an opinion clarifying this area of the law[6] and the parties agreed[7] to supplemental briefing which was filed in the fall of last year.[8]

---

[1] Plaintiff's Attorney's Planning Meeting Report, docket no. 31, filed July 9, 2010.

[2] Response to Plaintiff's Attorney's Planning Meeting Report, docket no. 32, filed July 14, 2010.

[3] Plaintiff's Reply Brief in Support of Her Proposed Scheduling Order and re: The Issue of Discovery in ERISA Cases, docket no. 34, filed July 21, 2010.

[4] Docket Text Order re: Initial Pretrial Conference, docket no. 35, filed July 21, 2010.

[5] Plaintiff's Supplemental Brief re: Conflict of Interest, docket no. 36, filed August 1, 2010; Response to Tillotson's Request for Leave to Conduct Discovery (Defendants' Memorandum 39), docket no. 39, filed August 27, 2010; Plaintiff's Reply Brief re: Discovery, docket no. 41, filed September 3, 2010.

[6] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010).

[7] Stipulated Motion for Supplemental Briefing, docket no. 45, filed October 4, 2010.

## Background

Jean Tillotson was an employee of Fidelity Brokerage Services since late 1993[9] and participated in its short and long term disability income plans.[10] These plans were funded by the employer[11] (whose legal name is now FMR LLC (FMR))[12] and administered by Life Insurance Company of North America (LINA),[13] which uses the service mark of "CIGNA Group Insurance."[14] LINA engaged Medical Review Institute of America (MRIA) to handle appeal determinations under the short term disability plan.[15]

### Tillotson's Claim and Appeal[16]

Tillotson submitted a claim for short term disability (STD) benefits which was approved on October 18, 2007, but only through October 21, 2007. The notice from LINA said that it would need additional medical information to approve payment of benefits after October 21st. On October 31, 2007, LINA called Tillotson to follow up on her status. Tillotson stated that she had decided to take FMLA leave through December 5, 2007. LINA told Tillotson that her claim would be denied after October 21, 2007. Tillotson indicated that she understood. By a letter dated November 1, 2007, LINA formally notified Tillotson of its decision to end the payment of

---

[8] Defendants' Supplemental Brief Regarding the Impact of *Murphy* on Tillotson's Request for Leave to Conduct Discovery, docket no. 46, filed October 19, 2010; [Plaintiff's] Supplemental Brief (Plaintiff's Supplemental Brief 47), docket no. 47, filed October 19, 2010; Plaintiff's Reply to Defendants' Supplemental Brief (Plaintiff's Reply 51), docket no. 51, filed October 28, 2010; Defendants' Supplemental Reply Brief Regarding the Impact of *Murphy* on Tillotson's Request for Leave to Conduct Discovery (Defendants' Reply 52), docket no. 52, filed October 28, 2010.

[9] Defendants' Memorandum 39, at 4.

[10] Complaint ¶ 2.

[11] Plaintiff's Reply 51, at 2.

[12] Defendants' Memorandum 39, at 1 & n.1.

[13] Complaint ¶ 5; Defendants' Memorandum 39, at 2.

[14] Defendants' Memorandum 39, at 3.

[15] *Id.* at 3.

[16] This statement of background facts is largely taken from Defendants' Memorandum 39, at 4-6.

benefits to her after October 20, 2007.  LINA informed Tillotson of her appeal rights, but she did not submit an appeal within the allowed time period.

Nearly two years later on September 8, 2009, Tillotson called LINA to inquire about "how to get benefits" under the Plans based on her receipt of an award of Social Security Disability Insurance benefits.  LINA indicated that she should have invoked the appeal process.  In a follow up voice mail message on November 5, 2009, LINA told Tillotson that her appeal rights had expired on April 28, 2008.

On February 1, 2010, Tillotson's lawyer submitted an appeal letter.  On February 3, 2010, LINA forwarded the appeal letter to MRIA, the third party responsible for reviewing appeals.  On February 3, 2010, LINA sent a letter to Tillotson's lawyer acknowledging the receipt of the appeal, noting the forwarding of the appeal to MRIA, and providing contact information for MRIA.  That same day, LINA sent a letter to Tillotson's lawyer setting a deadline of February 24, 2010 for the submission of additional materials.  On February 25, 2010, LINA received materials from Tillotson's lawyer, and forwarded those materials to MRIA.

MRIA referred the file to Dr. Saul Weingarden, who is Board Certified in Physical Medicine and Rehabilitation.  Dr. Weingarden reported that there was no documentation supporting the existence of a functional impairment preventing Tillottson from returning to work after October 20, 2007.  On March 4, 2010, MRIA issued its appeal determination letter which upheld LINA's decision to end the payment of benefits to Tillotson.

### Plaintiff's Proposed Discovery

"The Plaintiff intends to request discovery regarding the Defendants' conflict of interest, the financial arrangements and relationship between the Defendants, the relationship and financial arrangements between the Defendants and Medical Review Institute of America,

statistical information about the Defendants' claims processing and payment history, as well as documents and information which was requested during the administrative appeal process, but which the Defendants failed to produce."[17]

Plaintiff says this discovery is needed to verify compliance with ERISA regulations:

The Regulations underlying ERISA require that all participants and beneficiaries of an employee group welfare benefit plan be treated equally and consistently by the plan and its fiduciaries. 29 C.F.R. §2560.503-1(b)(5). Those Regulations also require plans and insurers to "establish and maintain reasonable claims procedures." 29 C.F.R. §2560.503-1(b). Each plan, among other things, must:
> ...contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

29 C.F.R. §2560.503-1(b)(5).[18]

Plaintiff also says that since "Defendants are required to maintain administrative processes and safeguards and to establish reasonable claims procedures . . . producing documentation of those processes, safeguards, and procedures should not be a significant burden."[19] Because "it would be surprising if the Defendants do not regularly compile statistical information about its plan participants and beneficiaries' claims and the approval or denial of those claims in its regular course of business,"[20] that information is also sought.

Finally, Plaintiff promises to "make sure that her discovery requests stay within the parameters of Rule 26(b). The scope will be narrow and very specific. If, when the requests are

---

[17] Plaintiff's Supplemental Brief 47, at 5.

[18] *Id.* at 6

[19] *Id.*

[20] *Id.*

made by the Plaintiff, the Defendants believe that the requests violate Rule 26, they may raise their objections with the Court."[21]

## Discussion

### Discovery in ERISA Cases

Generally in ERISA cases, there is no discovery. "In an ERISA case where . . . the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the administrator's decision for an abuse of discretion."[22] "[I]n reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record" and "extra-record discovery would generally seem inappropriate."[23]

There are, however, some ERISA cases in which discovery is permitted. In *Metropolitan Life Insurance Co. v. Glenn*[24] the Supreme Court held that the deferential "abuse of discretion" review standard applies even when a conflict of interest potentially affects the benefits decision. But in cases with a dual role conflict of interest, "the reviewing judge [is required] to take account of the conflict when determining whether the [plan administrator], substantively or procedurally, has abused his discretion."[25] Courts have struggled to determine what, if any discovery is appropriate in these sorts of ERISA cases to enable a judge to "take account of the conflict."[26] The recent Tenth Circuit opinion in *Murphy v. Deloitte & Touche Group Insurance*

---

[21] Plaintiff's Reply 51, at 4.

[22] *Murphy*, 619 F.3d at 1157 (internal quotation marks omitted).

[23] *Id.* at 1157 (internal quotation marks omitted).

[24] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

[25] *Id.* at 115.

[26] For a survey of the field after *Glenn*, see Elizabeth J. Bondurant, *Standard of Review and Discovery after Glenn: The Effect of the Glenn Standard of Review on the Role of Discovery in Cases Involving Conflicts of Interest*, 77 Def. Couns. J. 120, 124–32 (2010).

*Plan*[27] gives much needed guidance to the trial courts regarding discovery in ERISA cases where an inherent dual role conflict of interest exists because a single entity both insures (pays claims) and administers (makes payment decisions for) a benefit plan. The most recent briefing in this case discusses Plaintiff Tillotson's request for discovery in light of *Murphy*.

But *Murphy* does not permit discovery in this case. The fundamental pre-condition that authorizes an examination of discovery proposals under *Murphy* is whether the same entity "both insured and administered the Plan [and] thus . . . operated under an inherent dual role conflict of interest."[28] As Defendants claim, "[t]his case very clearly does not involve a dual role conflict of interest that would trigger the *Murphy* exception to the general prohibition against discovery."[29]

Defendants' briefing makes it clear that the employer FMR funds the plan, and that the administrator and appeal manager are separate.[30] The Summary Plan Description very clearly states that the STD Plan is self-insured.[31]

**Plan Directory: Health & Welfare Plans** *continued*

| PLAN NAME | PLAN NUMBER | CLAIMS ADMINISTRATOR | PLAN ADMINISTRATOR | FUNDING* | PLAN TYPE |
|---|---|---|---|---|---|
| Fidelity Investments Group Employee Short-Term Disability Plan | 530 | The Hartford P.O. Box 4925 Syracuse, NY 13221-9970 877-307-7509 | FMR Corp. 82 Devonshire St.; ZE6C Boston, MA 02109 | Self-Insured and funded entirely by employer contributions | Employee welfare plan providing short-term disability benefits |

Because different entities fund and administer the STD Plan "neither LINA nor MRIA in their respective roles as Claim Administrator and Appeal Administrator of the STD Plan have the

---

[27] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010).

[28] *Murphy*, 619 F.3d at 1154.

[29] Defendants' Reply 52, at 2.

[30] Defendants' Memorandum 39, at 2-3.

[31] *Id.* at 2, citing to the Summary Plan Description which is attached as Exhibit B to Defendants' Memorandum 39. The document shown above is LINA Rec. 224.

requisite dual capacity of insurer and administrator that creates an 'inherent conflict of interest' under Glenn."[32]

Plaintiff claims that even though there are separate funding and administering entities, there is a conflict of interest because the administrator (LINA) and the entity that handles appeals (MRIA) are contractually bound to and compensated by the entity that funds the plan (FMR).

> The financial interests of LINA and MRIoA are best served by making FMR happy, which is best accomplished by keeping FMR's funding liability low. This is accomplished by denying as many claims as possible. This underlying agenda on the part of FMR's agents is imputed to FMR itself – the funding source for STD benefits – thus creating a very real conflict of interest. [33]

But this argument would authorize discovery in almost every ERISA case. Employers which fund plans often contract with a professional administrator and those administrators often contract with outside entities to manage appeals. Every contractual relationship, in a competitive environment, has advantages and disadvantages for both parties. No ERISA case law suggests that these contractual relationships create a conflict of interest justifying discovery. *Glenn* and *Murphy* only speak of a "dual role conflict of interest" of payor and administrator.

Because the threshold "dual role conflict of interest" does not exist in this case, there is no basis for conducting a *Murphy* analysis to see if discovery is merited and what discovery is permissible. This case will proceed to decision on the administrative record.

---

[32] Defendants' Memorandum 39, at 18.

[33] Plaintiff's Reply 51 at 2-3.

**ORDER**

IT IS HEREBY ORDERED that the parties shall submit a proposed schedule within fourteen days.

Dated January 28, 2011.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge